668 P.2d 1114

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Henry BLEA, Defendant-Appellant.**

**No. 7097.**

Court of Appeals of New Mexico.

July 21, 1983.

Paul Bardacke, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Henry R. Quintero, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

DONNELLY, Judge.

Convicted in Bernalillo County Metropolitan Court of Unlawfully Carrying a Deadly Weapon under Albuquerque City Ordinance § 2–8(A), defendant appealed to the Bernalillo County District Court. After a trial *de novo,* the trial court again convicted defendant; he appeals.

At the time of his arrest, defendant was carrying in his pockets the pieces to an inoperable voltage tester, including an ice-pick-like part with a one and one-half inch point. The issue presented here is whether

the concealed carrying of this instrument, designed for use for innocent purposes, is *per se* a "weapon which is capable of producing death or great bodily harm," as described by the ordinance § 2–8, *supra.*[1]

On September 11, 1982, at almost midnight, two Albuquerque police officers stopped defendant and three others for jay walking. There had been "trouble" in the area during the night before and defendant's companions were wearing clothes which identified them as members of a local "gang."

When asked for his identity, defendant responded with a false name. One officer realized this, since he had been involved in a prior incident with defendant. Defendant eventually admitted his true name.

During a pat-down search, the police discovered that defendant was carrying the parts to the broken voltage tester—the pointed section in one pocket, the wire, some plastic, and the clip in another.

According to the police, defendant never overtly indicated any intention to use the tester as a weapon. At least one police officer was aware the item had a benign use. Defendant testified that he had found the voltage tester near his sister's house but did not know what it was; he was planning to find out what it was and repair it himself or with his brother-in-law's assistance.

The trial court without a jury convicted defendant of Unlawfully Carrying a Deadly Weapon under § 2–8, *supra,* on the theory that defendant was guilty if he merely (1) possessed (2) a concealed article (3) which could be used as a weapon—without regard to its use or intended use, or his purpose for carrying the item.

Defendant argues that, unless the instrument found concealed on him is a deadly weapon *per se* as defined in the statute, he cannot be found guilty of the offense without proof that he either used or intended to use the item as a deadly weapon. He urges that mere possession of an article designed for innocent purposes, unrelated to violence, constitutes no crime in other jurisdictions where similar ordinances or statutes have been construed. Mere proof that the voltage meter part *could* be used as a weapon is not enough, defendant contends.

Albuquerque City Ordinance § 2–8(A), *supra,* proscribes carrying a concealed deadly weapon, on the person, or in close proximity thereto. Section 2–8(B) defines "deadly weapon" as "any firearm or any weapon which is capable of producing death or great bodily harm, including but not restricted to, any type of dagger, metallic knuckles, switchblade, poniard, dirk knife, sword cane, sharp pointed cane or rod, slingshot, bludgeon, knum chucks, straight razor, or slapper." No express mention is made of any item or type of item manufactured for innocent, non-violent purposes which nonetheless has a potential violent use, *e.g.,* a pen, a nail file, or a screwdriver.[2]

■ We, like other jurisdictions, construe this statute to include the factual test whether, under the surrounding circumstances, the purpose of carrying the object

---

1. Albuquerque City Ordinance § 2–8:
UNLAWFULLY CARRYING DEADLY WEAPONS.
  A. Unlawfully carrying a deadly weapon consists of carrying a deadly weapon concealed in a manner making it not readily visible on the person or in close proximity thereto, so that the weapon is readily accessible for use; except:
  1. In the person's residence or on real property belonging to him as owner, lessee, tenant or licensee; or
  2. In a private automobile or other private means of conveyance for the lawful protection of his person or property, or the person or property of another; or
  3. By a peace officer in the lawful discharge of his duties; or
  4. On a target range, as authorized by law.
  B. "Deadly weapon," in this section means any firearm or any weapon which is capable of producing death or great bodily harm, including but not restricted to, any type of dagger, metallic knuckles, switchblade, poniard, dirk knife, sword cane, sharp pointed cane or rod, slingshot, bludgeon, knum chucks, straight razor, or slapper.
  C. Nothing in this section shall be construed to prevent the carrying of any unloaded firearm.

2. *See also* NMSA 1978, § 30–1–12(B) (defining "deadly weapon"); NMSA 1978, § 30–7–2 (unlawful carrying of a deadly weapon).

was for use as a weapon. *See, e.g., Scott v. United States,* 243 A.2d 54 (D.C.App.1968); *State v. Rackle,* 55 Haw. 531, 523 P.2d 299 (1974); *People v. Vaines,* 310 Mich. 500, 17 N.W.2d 729 (1945); *State v. Green,* 62 N.J. 547, 303 A.2d 312 (1973); *see also State v. Gonzales,* 85 N.M. 780, 517 P.2d 1306 (Ct. App.1973). This does not mean that proof of intent to actually use the article to inflict bodily harm is necessary; the test is whether the purpose of carrying the item was its use as a weapon. *See Leftwitch v. United States,* 251 A.2d 646 (D.C.App.1969).

Factors to be considered include (1) the nature of the instrument, *i.e.,* its size, shape, condition and possible alteration; (2) the circumstances under which it is carried, *i.e.,* the time, place and situation in which defendant is found with it; (3) defendant's actions *vis-a-vis* the item; and (4) the place of concealment. *See State v. Gonzales, supra; Scott, supra; Green, supra; State v. Baldwin,* 571 S.W.2d 236 (Mo.1978).

We interpret the Albuquerque City Ordinance catch-all phrase as fashioned to give the necessary "flexibility of scope to bring within its ambit instruments closely associated with criminal activity whose sole design and purpose is to inflict bodily injury or death upon another human being." *See State v. Rackle, supra.* It was not, however, intended to attach strict criminal liability to any person who happens to be carrying a pencil, hammer, flashlight or nail file in his pocket, handbag or back pack.

Defendant contends that the use of the word "weapon" in the catch-all phrase indicates that the ordinance was not intended to prohibit any object capable of inflicting bodily harm or death but to restrict only the carrying of weapons, that is, instruments designed to fight with, for offensive or defensive use. *See Com. v. Sampson,* 383 Mass. 750, 422 N.E.2d 450 (1981). If an object is not specifically listed as a deadly weapon, in order to convict under the ordinance, the prosecution must prove as a matter of fact that defendant carried the instrument because it could be used as a weapon. *See People v. Morris,* 8 Mich.App. 688, 155 N.W.2d 270 (1968).

The specifically enumerated objects in the ordinance are weapons by design. A voltage tester, or other utilitarian tool or object is not per se a weapon; it may, however, become a weapon by its actual use, *e.g., State v. Gonzales, supra,* or by the purpose for which it is carried. *E.g., State v. Candelaria,* 97 N.M. 64, 636 P.2d 883 (Ct.App.1981); *Baldwin, supra; see also State v. Walden,* 41 N.M. 418, 70 P.2d 149 (1937). Hence, a factual finding as to defendant's intent or purpose in carrying the object is necessary to determine guilt or innocence of an accused charged with carrying a concealed article not expressly listed as a deadly weapon by the ordinance.

Culpability under the carrying a concealed weapon ordinance when the object is not specifically listed as a deadly weapon per se, requires the physical act of defendant to be combined with the requisite criminal intent. *See State v. Fuentes,* 85 N.M. 274, 511 P.2d 760 (Ct.App.1973). In such case a criminal intent is required under the offense here charged. The criminal intent required herein is an intent to carry or to use the concealed object as a weapon.

We remand for a specific factual finding as to whether defendant possessed the requisite criminal intent at the time of the alleged offense. *See* NMSA 1978, Crim. P.R. 38(d) (Repl.Pamp.1980). If the court finds that the defendant did have the requisite intent, this conviction is affirmed. If not, the conviction is reversed and the cause remanded to the trial court to set aside defendant's judgment and sentence.

IT IS SO ORDERED.

WALTERS, C.J., and BIVINS, J., concur.