2001-NMCA-027

24 P.3d 327

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Terry ANDERSON, Defendant–Appellant.**

**No. 20,730.**

Court of Appeals of New Mexico.

March 20, 2001.

Certiorari Denied, No. 26,890, May 7, 2001.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

SUTIN, J.

{1} Terry Anderson (Defendant) appeals his conviction for aggravated stalking. This appeal requires our analysis of what nexus the State must prove between the possession of an object determined by a jury to be a deadly weapon and the commission of the crime of stalking. We reverse.

## BACKGROUND

{2} Defendant began a pattern of bothering Victim in mid–1996, when they both attended regular meetings of Alcoholics Anonymous. As time went on, he left strange telephone messages and made repeated "hang-up" telephone calls to her home, after she asked him not to talk to her. Defendant stared at Victim during entire meetings, whispered her name throughout one meeting, grabbed her arm as she left one evening, and ultimately was banned in December 1997 from the meeting location because of his conduct. After that, he regularly waited for and watched her from outside the property from which he was restricted.

{3} In August 1998, Victim found a strange note that she assumed was from Defendant on her door suggesting that if she did not go to a certain location at a specific time the writer would leave town. The next day, Victim saw Defendant walking in her neighborhood. A few minutes later, she heard someone knocking on her door and she immediately called the police, naming Defendant as a probable stalker. Two deputy sheriffs responded to the police dispatch resulting from Victim's call.

{4} The first deputy to respond stopped Defendant within a block of Victim's residence. After taking Defendant's name, he conducted a pat-down search that produced a can of mace. Then, the deputy asked Defendant whether he had any other weapons. He responded that he had a stick, which the deputy removed from Defendant's bag. The bag also contained clothing and hygiene items.

{5} Based on his conduct and possession of the stick, Defendant was convicted of the crimes of aggravated stalking, battery, and criminal trespass. The aggravated stalking conviction was based on Defendant's possession of a deadly weapon, namely, the stick in his bag.

{6} Victim testified that she at first had an uneasy feeling about Defendant, was angry at his conduct, and felt fearful, sensing that something was not right with him. As time went on, she was angry, frustrated, scared, and fearful based on Defendant's calls, staring, and lurking. She felt threatened by his behavior and felt afraid because she did not know what he was capable of.

{7} The stick was a round, 14–inch long, one-inch in diameter piece of wood. Defendant testified in a pretrial suppression hearing that he used the stick not as a weapon but, as a homeless person, to sift through trash in dumpsters. He did not testify at trial.

{8} During trial, Defendant moved for a directed verdict, arguing as he does here that the State failed to prove a nexus between the alleged deadly weapon and the alleged crime of stalking. In closing argument, Defendant conceded that he committed harassment, a lesser-included offense of stalking. He suggested further that the jury might properly convict him of stalking, a lesser-included offense of aggravated stalking. Defendant argued though that a conviction of aggravated stalking would be improper because the court erred in not instructing the jury that in order to convict for aggravated stalking they must find a specific relationship to exist, i.e., a nexus, between the possession of the stick, even assuming that it was a weapon, and the stalking.

**Standard of Review**

{9} Whether the State is required to prove a nexus between the stick and the stalking beyond the elements set out in the aggravated stalking statute is a question of law which we review de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (interpretation of a statute is an issue of law, not a question of fact).

**DISCUSSION**

**Stalking**

A. Stalking consists of a person knowingly pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened. The alleged stalker must intend to place another person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint or the alleged stalker must intend to cause a reasonable person to fear for his safety or the safety of a household member. In furtherance of the stalking, the alleged stalker must commit one or more of the following acts on more than one occasion:

(1) following another person, in a place other than the residence of the alleged stalker;

(2) placing another person under surveillance by being present outside that person's residence, school, workplace or motor vehicle or any other place frequented by that person, other than the residence of the alleged stalker; or

(3) harassing another person.

NMSA 1978, § 30–3A–3 (1997).

**Aggravated Stalking**

{10} Aggravated stalking is stalking when "in possession of a deadly weapon." Section 30–3A–3.1(A)(3). Under UJI 14–333 NMRA 2001, a defendant may be found guilty of aggravated stalking if, at the time of commission of the offense of stalking, the defendant "was in possession of a deadly weapon."

**The Jury Determination**

{11} The district court did not give UJI 14–333 to the jury in this case. Instead, the

court substituted its own definition of deadly weapon, instructing the jury that in order to find Defendant guilty of aggravated stalking, the State was required to prove that at the time of the stalking Defendant "was in possession of an instrument or object, which, when used as a deadly weapon can cause death or very serious injury." And in another, separate instruction the jury was given a definition of deadly weapon: "A deadly weapon is an instrument or object which, when used as a weapon, could cause death or very serious injury." The jury was not instructed in the language of the statute or UJI 14–333 that the crime of aggravated stalking consisted of "stalking when in possession of a deadly weapon."

{12} By convicting Defendant of aggravated stalking, the jury necessarily made two findings: first, Defendant committed the crime of stalking; and second, the stick in his bag was an instrument or object which, when used as a weapon, could cause death or very serious injury. This in effect was a determination that the stick was a "deadly weapon." The stalking thereby automatically became "aggravated."

■ {13} The issue before us is whether the jury determinations are sufficient to convict for aggravated stalking without additional proof by the State that Defendant possessed the stick *with the intent to use it as a weapon.* In order to decide this issue, we find it helpful to examine our deadly weapon law.

## I. New Mexico Deadly Weapon Law

### A. Deadly Weapon Defined

{14} The phrase "deadly weapon" is defined in NMSA 1978, § 30–1–12(B) (1963):

"deadly weapon" means any firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including sword-canes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted.

Section 30–1–12(B) was enacted in 1963 as part of a revised criminal code. Criminal Code, ch. 303, Art. I § 1–13(B), 1963 N.M. Laws 829, 833. Then, as now, several criminal laws contained the phrase "deadly weapon." The definition of "deadly weapon" remains unchanged today.

{15} Section 30–1–12(B) specifically names and describes objects made for use as weapons or which, experience has shown, are often used as weapons. *See State v. Traeger,* 2000–NMCA–015, ¶ 11, 128 N.M. 668, 997 P.2d 142. A jury can conclude that those objects or instruments are deadly weapons, without more. Section 30–1–12(B) also includes more broadly described "weapons," that is, "any other weapons with which dangerous wounds can be inflicted." As to these types of weapons, the jury's sole guidance is that the object or instrument is a weapon with which dangerous wounds can be inflicted. We have categorized such items as weapons "not listed" in Section 30–1–12(B). *See State v. Montano,* 1999–NMCA–023, ¶ 5, 126 N.M. 609, 973 P.2d 861.

■ {16} Such a broad catchall definition implicates possession of otherwise utilitarian or innocent objects and instruments as criminal. *State v. Blea,* 100 N.M. 237, 239, 668 P.2d 1114, 1116 (Ct.App.1983). Such objects and instruments are not deadly weapons by specific naming or description in the definition but may be deemed so by a jury looking at the circumstances of a case and perhaps the language and purposes of applicable statutes. *Traeger,* 2000–NMCA–015, ¶¶ 10–11. The jury is to determine whether a weapon comes within the catchall "by considering the character of the instrument and the manner of its use." *State v. Gonzales,* 85 N.M. 780, 781, 517 P.2d 1306, 1307 (Ct.App. 1973).

{17} Applying the catchall, some uniform jury instructions have replaced the statutory definitional word "weapons" by "objects or instruments," and the words "other weapons with which dangerous wounds can be inflicted" by "instruments or objects which, when

used as [weapons], could cause death or very serious injury." *See, e.g.,* UJI 14–1621 NMRA 2001, use note 4. Here, as noted above, the catchall phrase "or any other weapons with which dangerous wounds can be inflicted" contained in Section 30–1–12(B) was replaced by the jury instruction language, "[a] deadly weapon is an instrument or object which, when used as a weapon, could cause death or very serious injury."

{18} The upshot of this adaptation in the instruction used in the case before us is that juries are directed to find that an unlisted object is a deadly weapon solely based on the object's potential to inflict serious injury if used as a weapon. An unlisted object can be characterized as a deadly weapon not based on its actual use but simply because of its possible use as a weapon. This formula governed the jury determinations in the present case, permitting the jury to determine the stick to be a deadly weapon. The jury was required to determine if the stick came within the catchall category. Defendant was held strictly liable based on mere possession of the stick because conceivably it could inflict serious injury if used as a weapon.

## B. Use of a Deadly Weapon

■ {19} Certain New Mexico statutes aggravate a crime when the perpetrator *uses* a deadly weapon. *See, e.g.,* NMSA 1978, §§ 30–3–2(A) (1963) (aggravated assault), and 30–3–5(C) (1969) (aggravated battery).[1] In the use context, we have held that if the object or instrument used is not specifically listed in the Section 30–1–12(B) definition of a deadly weapon, "it is the province of the jury to determine whether the instrument or object used to inflict injury was a deadly weapon." *Montano,* 1999–NMCA–023, ¶¶ 10, 16 (agreeing that a harmless object when used for its customary purpose can become a deadly weapon when used in a manner that renders it capable of causing serious injury,

*e.g.,* a brick wall used to commit battery). *See also State v. Bonham,* 1998–NMCA–178, ¶¶ 25–26, 126 N.M. 382, 970 P.2d 154 (holding jury's fact finding function of deciding whether a trivet was a deadly weapon was usurped by instruction that stated that it was). The jury should make the determination based "on the character of the object and the manner of its use." *Montano,* 1999–NMCA–023, ¶ 11; *accord Gonzales,* 85 N.M. at 781, 517 P.2d at 1307 (discussing whether a tire tool was a deadly weapon).

## C. Possession of a Deadly Weapon

{20} A different analysis applies to criminal statutes relating to a person having, but not necessarily using a deadly weapon: a person may be "armed with," "in possession of," or "carrying" a deadly weapon.

### 1. Armed With a Deadly Weapon

■ {21} Some statutes aggravate a predicate crime when the perpetrator is *armed with a deadly weapon.* NMSA 1978, §§ 30–16–2 (1973) (robbery), and 30–16–4 (1963) (aggravated burglary). Under the aggravated burglary statute, the perpetrator can be convicted even when no use is intended. *State v. Tisthammer,* 1998–NMCA–115, ¶¶ 32–37, 126 N.M. 52, 966 P.2d 760 (holding that the mere theft of firearms during burglary can constitute aggravated burglary); *State v. Luna,* 99 N.M. 76, 78, 653 P.2d 1222, 1224 (Ct.App.1982) (holding that the theft of an unloaded firearm can constitute aggravated burglary). We upheld those convictions for mere possession of a firearm based on a legislative intent "to deter the commission of burglaries and the possession of firearms during such crimes." *Id.* at 77, 653 P.2d at 1223; *accord Tisthammer,* 1998–NMCA–115, ¶ 37 (involving possession of firearms). This Court reaffirmed that deterrence rationale as it applied to possession of a large hunting knife stolen during a burglary. *State v. Pa-*

---

1. The statutes and related UJIs requiring use are: NMSA 1978, § 30–3–2A (1963) (aggravated assault) with UJI 14–304, 14–305, and 14–306 NMRA 2001; NMSA 1978, § 30–3–5C (1969) (aggravated battery) with UJI 14–322 NMRA 2001; NMSA 1978, § 30–7–4 (1993) (negligent use of a deadly weapon) with UJI 14–703 NMRA 2001; NMSA 1978, §§ 30–9–12B(3) (1993), – 13A(2)(d) (1991), & –11D(5) (1993) (criminal sexual conduct) with UJIs 14–914, 14–935, and 14–955 NMRA 2001; NMSA 1978, §§ 30–22–22A(1) and (2) (1971) (aggravated assault upon a peace officer) with UJIs 14–2201, 14–2202, and 14–2203 NMRA 2001; NMSA 1978, § 30–22–25C (1971) (aggravated battery upon a peace officer) with UJI 14–2212 NMRA 2001.

*dilla,* 1996–NMCA–072, ¶¶ 8–12, 122 N.M. 92, 920 P.2d 1046.

## 2. In Possession of or Carrying a Deadly Weapon While in a Specific Location

{22} Other statutes make it a crime when a person possesses a deadly weapon *while in a particular location.* Thus, it is a crime for a prison inmate to possess a deadly weapon. NMSA 1978, § 30–22–16 (1986); *State v. Baca,* 114 N.M. 668, 674, 845 P.2d 762, 768 (1992) (prisoner's explanation of an innocent purpose was irrelevant). It is a crime to carry a deadly weapon on school premises. NMSA 1978, § 30–7–2.1(A) (1994); *State v. Salazar,* 1997–NMCA–043, ¶¶ 8–9, 123 N.M. 347, 940 P.2d 195. It is also a crime to be in possession of a readily accessible deadly weapon while boarding or attempting to board a commercial bus. NMSA 1978, § 30–7–13(A) (1979).

## 3. Carrying a Concealed Deadly Weapon

{23} One statute makes the carrying of a *concealed* deadly weapon anywhere a crime. NMSA 1978, § 30–7–2(A) (1985); *State v. Riddall,* 112 N.M. 78, 84, 811 P.2d 576, 582 (Ct.App.1991). We interpreted a city ordinance to require that the prosecution "prove as a matter of fact that defendant carried the instrument because it could be used as a weapon." *Blea,* 100 N.M. at 239, 668 P.2d at 1116. We said: "Hence, a factual finding as to defendant's intent or purpose in carrying the object is necessary to determine guilt or innocence of an accused charged with carrying a concealed article not expressly listed as a deadly weapon by the ordinance." *Id.* "Culpability under [these circumstances] requires the physical act of defendant to be combined with the requisite criminal intent . . . . to carry or to use the concealed object as a weapon." *Id.* "[The ordinance] was not . . . intended to attach strict criminal liability to any person who happens to be carrying a pencil, hammer, flashlight or nail file in his pocket, handbag or back pack." *Id.*

## 4. "In Possession" of a Deadly Weapon

{24} Aggravated stalking requires only that the perpetrator of stalking be "in possession of a deadly weapon." Section 30–3A–3.1(A)(3). While aggravated stalking fits within the "possession" category of deadly weapon law, it differs in various ways from other deadly weapon laws in that category. The Legislature enacted the stalking law in 1997, with the benefit of the existing statutory language and case law. The Legislature did not use "armed with," as in the robbery and aggravated burglary statutes. Aggravated stalking is not tied to a particular location, such as a prison setting, a school, or a bus. The statute makes no mention of when, during the stalking "pattern of conduct," the stalker must be in possession of the deadly weapon. Nor does the statute limit the possession to a location within any particular proximity to the intended stalking victim. Concealment is not an element. Yet stalking, the underlying or predicate crime, is somewhat similar to assault in that the stalking perpetrator intends to place a victim in apprehension and fear by engaging in conduct that may have the effect of placing the victim in apprehension and fear.

{25} Thus, although aggravated stalking need not be construed as requiring, like aggravated assault, some *use* of a weapon, it is reasonable to construe the aggravated stalking statute as requiring some *intent* to use a weapon not specifically named or specifically described in Section 30–1–12(B) as a weapon.

## 5. Construction of the Broad Catchall Definition

{26} No New Mexico deadly weapon case directly addresses the issue whether a perpetrator can be held strictly liable for aggravation of a crime by the mere possession of an unlisted object or instrument that the jury determines could, if used as a weapon, inflict serious injury. While two cases discuss intent, neither involves aggravation by possessing a deadly weapon during the commission of a predicate crime. *See Baca,* 114 N.M. at 674, 845 P.2d at 768 (involving possession of a deadly weapon by a prisoner), and *Blea,* 100 N.M. at 239, 668 P.2d at 1116 (involving carrying a concealed deadly weapon). Thus, strict liability based on proof of mere possession of an unlisted object or instrument while committing a predicate crime is a matter of first impression in New Mexico.

## II. Criminal Liability Under the Aggravated Stalking Statute

{27} In its proof of aggravated stalking, the State showed nothing more than commission of stalking and possession of the stick. The State argues that it must prove a nexus only to the extent that the person possess the weapon during the act of stalking. According to the State, that nexus satisfies legislative concern that "mere possession of a deadly weapon during the act of stalking [is] sufficiently dangerous or menacing to increase the criminal culpability of the crime."

{28} We look, then, at whether stalking can be aggravated without requiring the jury to connect the stalker's possession of an object with an intent to use it as a weapon. The catchall definition allows a jury to determine that an object not made to be a weapon and not traditionally used as a weapon nevertheless may be determined to be a deadly weapon, even when there is no actual harm or intent to use the object as a weapon. The instructions given in the present case permitted the jury to do just that. A jury is permitted this discretion even with respect to natural or manufactured objects or instruments commonly used for innocent, lawful, utilitarian, or ornamental purposes.

{29} We harbor concern because a person such as Defendant can innocently carry a flashlight, *e.g., Blea,* 100 N.M. at 239, 668 P.2d at 1116, or have car-related tools such as a screwdriver or crowbar in the trunk of his vehicle, *e.g., Gonzales,* yet be subject to a charge for aggravated stalking.

{30} In *State v. Peete,* 185 Wis.2d 4, 517 N.W.2d 149 (1994), the statute in question set an enhanced penalty for "a person [who] commits a crime while possessing, using or threatening to use a dangerous weapon." *Id.* at 150 n. 1. The predicate crime was possession of cocaine with intent to deliver. *Id.* at 151. During a search of premises where the defendant was present and the drugs were found, the police also found four loaded handguns in various locations. *Id.* The Wisconsin Supreme Court reversed the defendant's conviction, requiring proof of a relationship, i.e., a nexus, between the predicate crime and possession of the weapons. *See id.* at 154. Specifically, the court held that the state was

"required to prove that the defendant possessed the weapon to facilitate commission of the predicate offense." *Id.*

{31} The defendant in *Peete* was in possession of a firearm, yet the court in *Peete* required proof of a nexus. In the case before us, Defendant possessed no firearm or other listed deadly weapon. Rather, Defendant possessed an unlisted object. Innumerable circumstances exist in which persons embarked on crime possess objects unrelated to the crime pursued except through the perpetrator's intent regarding the use of the object. Innumerable circumstances exist in which such objects are natural objects or made for harmless use and possessed for purely innocent use. Without a correction in prosecutorial course, persons charged with aggravated stalking can be convicted without proof that the person in possession formed some intent to use or otherwise used the object to facilitate the underlying offense of stalking.

{32} We acknowledge the Legislature's apparent deterrence purpose. However, in the balancing process, we must assure that persons are not unfairly charged and punished for innocent conduct bearing no relationship with the predicate offense. We conclude that, under an aggravated stalking charge, when the object or instrument in question is an unlisted one that falls within the catchall language of Section 30–1–12(B), the jury must be instructed (1) that the defendant must have possessed the object or instrument with the intent to use it as a weapon, and (2) the object or instrument is one that, if so used, could inflict dangerous wounds. Neither the statutory definition of deadly weapon as it was originally written and intended nor the translation of that definition into UJIs so far have provided a defendant charged with aggravated stalking sufficient constitutional protection unless the intent element is supplied in this fashion.

{33} The UJI for aggravated stalking, UJI 14–333, requires only that the defendant "was in possession of a deadly weapon." Although presumed to be correct, *State v. Magby,* 1998–NMSC–042, ¶ 19, 126 N.M. 361, 969 P.2d 965, *overruled in part on other grounds by State v. Mascarenas,* 2000–

**302**

NMSC–017, ¶ 27, 129 N.M. 230, 4 P.3d 1221, this uniform jury instruction cannot adequately inform a jury as to what constitutes a deadly weapon without a definition of deadly weapon that includes the intent element requiring proof of a nexus beyond mere possession while stalking. Nor can an instruction containing the catchall definitional phrase in Section 30–1–12(B), or an instruction like that used here. *See Peete,* 517 N.W.2d at 154 (adopting both parties' view that "the state should be required to prove that the defendant possessed the weapon to facilitate commission of the predicate offense").

{34} We do not add an element unintended by the Legislature or the Supreme Court. *State v. Romero,* 2000–NMCA–029, ¶ 27, 128 N.M. 806, 999 P.2d 1038. In construing the aggravated stalking statute and the uniform jury instructions, we consider the history and background of the deadly weapon law. *Id.* As to the language of statutes, "a literal reading must give way to a reasonable construction when the literal reading leads to injustice, absurdity, or contradiction." *Id.; accord State v. Nance,* 77 N.M. 39, 46, 419 P.2d 242, 246–47 (1966); *Peete,* 517 N.W.2d at 153 (stating that "it would be absurd to apply the penalty enhancement statute to situations in which there is no relationship between the offense and possession of a dangerous weapon").

**CONCLUSION**

{35} We hold that the State failed to prove an essential element of aggravated stalking under Section 30–3A–3.1(A)(3) and therefore reverse the conviction and any judgment entered on that conviction insofar as it constitutes an enhanced or felony conviction or judgment. The jury, of necessity, determined that Defendant committed the crime of stalking under Section 30–3A–3. We remand to the district court to enter judgment of guilt as to stalking under Section 30–3A–3.

{36} IT IS SO ORDERED.

BUSTAMANTE and ARMIJO, JJ., concur.