This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 30,005**

**ROSS CLYMO,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Camille Martinez Olguin, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Adrianne R. Turner, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Ross Clymo (Defendant) appeals from the judgment, sentence, and order suspending his sentence, convicting him, after a jury trial, of robbery, assault with intent to commit a violent felony (firearm enhancement), two counts of aggravated

battery (deadly weapon), two counts of false imprisonment, and two counts of battery. [RP 404] Defendant initially raised four issues on appeal, and this Court proposed to affirm in a first calendar notice. [CN1] In the memorandum in opposition, Defendant moved to amend the docketing statement with two new issues. [1MIO] This Court granted the motion to amend and proposed to affirm on all issues in a second calendar notice. [CN2]

Defendant has now filed a second memorandum in opposition that we have duly considered. [2MIO] Unpersuaded, however, we affirm Defendant's convictions.

**DISCUSSION**

**Rule 5-604 NMRA**

Since this Court's first calendar notice was issued, our Supreme Court has "withdrawn" Rule 5-604(B)-(E) for all pending cases as of May 12, 2010. *State v. Savedra*, 2010-NMSC-025, ¶ 9, __N.M.__, __ P.3d __ (observing that "the six-month rule has become an unnecessary and sometimes counterproductive method for protecting a defendant's right to a speedy trial. Therefore, effective for all cases pending as of the date this opinion is filed, we withdraw the six month rule provisions set forth in Rule 5-604(B)-(E)"). *Savedra* also provides that, in light of the withdrawal of Rule 5-604, "]the] defendants may rely upon and assert their right to a speedy trial whenever they believe impermissible delay has occurred; whether that

delay is the result of a dismissal and refiling or any other cause." *Id.* In the second calendar notice, we noted that Defendant raised a speedy trial issue on appeal, and we proposed to analyze Defendant's concerns about delay in this issue in the context of his speedy trial issue.

In his memorandum in opposition to this Court's second calendar notice, Defendant contends that *Savedra* should not be applied to his case. [2MIO 2] Defendant argues that by "pending," the Supreme Court intended for its opinion to be effective for all cases still pending in *district* court, where the right to speedy trial could still be asserted, and not to cases pending on appeal. [Id.]

As generally understood, the word "pending" means "not finalized." "A case is finalized when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *See State v. Nunez*, 2000-NMSC-013, ¶ 114, 129 N.M. 63, 2 P.3d 264 (internal quotation marks and citation omitted)). As such, arguably, because this case is not finalized, it is "pending" and, under the plain language of the *Savedra* opinion, *Savedra* applies to Defendant's case.

In any case, however, we need not specifically decide whether to apply *Savedra* to this case. As discussed in the first calendar notice, which was issued prior to *Savedra*, Defendant's Rule 5-604 issue is affirmable. As the district court ruled, the

State's Rule 5-604 petition for extension of time to try Defendant was timely filed. [RP 154, ¶ 1] Defendant was arraigned in district court on July 7, 2008. [RP 100, ¶ 4] The State's Rule 5-604 petition for extension of time was filed on January 6, 2009. [RP 99] Defendant had asserted that the six-month rule expired in this case on January 5, 2009, citing magistrate court Rule 6-506 NMRA, which provides that in magistrate court, the deadline is one hundred and eighty-two days after the date of arraignment. As we pointed out in the first calendar notice, however, the applicable district court Rule 5-604 does not specify a specific number of days, providing rather that the trial of a criminal case shall be commenced "six months" after either the date of arraignment or waiver of arraignment, whichever occurs later. In this case, the six-month time period expired on January 7, 2009, making the State's petition for extension of time timely filed on January 6, 2009. Further, as the State pointed out, there does not appear to be any New Mexico authority that interprets Rule 5-604 as allowing the State one-hundred and eighty-two days to try a defendant in district court rather than "six months" as the language of district court Rule 5-604 reads.

Accordingly, we affirm the district court on this issue, whether it is analyzed below under the speedy trial issue in accordance with *Savedra,* or whether it is analyzed in accordance with the law applicable prior to *Savedra*.

We turn now to the other issues on appeal. In his second memorandum in opposition, Defendant has not provided any new facts, authority, or argument with regard to the remaining issues discussed below. *See State v. Mondragon*, 107 N.M. 421, 423, 759 P.2d 1003, 1005 (Ct. App. 1988) (stating that a party responding to a summary calendar notice must come forward and specifically point out errors of law and fact, and the repetition of earlier arguments does not fulfill this requirement). Thus, we affirm on these issues as discussed below and in the second calendar notice.

**Aggravated Battery with a Deadly Weapon (Motor Vehicle)**

It is well-established that "where the instrument used is not one declared by the statute to be a deadly weapon, it is ordinarily a question for the jury to determine whether it is so, considering the character of the instrument and the manner of its use." *State v. Traeger*, 2001-NMSC-022, ¶ 10, 130 N.M. 618, 29 P.3d 518 (internal quotation marks and citation omitted). In making this determination, the jury must decide whether the object or instrument is a "weapon which is capable of producing death or great bodily harm" or a weapon "with which dangerous thrusts can be inflicted." NMSA 1978, § 30-1-12(B) (1963); UJI 14-322 NMRA; *State v. Anderson*, 2001-NMCA-027, ¶ 15, 130 N.M. 295, 24 P.3d 327.

In this case, the jury was instructed that in order for it to find Defendant guilty of two counts of aggravated battery with a deadly weapon, the State was required to

prove the following elements to the satisfaction of the jury beyond a reasonable doubt: (1) Defendant touched or applied force to the victims by battering him and her with a motor vehicle. Defendant used a motor vehicle. A motor vehicle is a deadly weapon only if you find that a motor vehicle when used as a weapon, could cause death or great bodily harm; (2) Defendant intended to injure the victims; (3) Defendant was not intoxicated from use of alcohol at the time the offense was committed to the extent of being incapable of forming an intention to batter the victims with a motor vehicle; and (4) this happened in New Mexico on or about March 20, 2008. [RP 334, 337] The jury convicted Defendant of the two counts of aggravated battery with a deadly weapon. [RP 358-59]

At trial, the two victims, Mr. and Mrs. O'Dell, testified that, after the events that led to the several other charges against Defendant, Defendant drove onto the state highway following them and used his pickup truck to ram the rear end of their pickup truck. [DS 5] The aggravated battery statute is directed at preserving the integrity of a person's body against serious injury. *State v. Vallejos*, 2000-NMCA-075, ¶¶ 15, 18, 129 N.M. 424, 9 P.3d 668. Thus, we construe the statute to protect an individual from the possibility of serious injury, regardless of the nature of the instrument used to injure. *See State v. Neatherlin*, 2007-NMCA-035, ¶ 16, 141 N.M. 328, 154 P.3d 703. In this case, the jury concluded that Defendant used a motor vehicle as a deadly

6

weapon. As such, the jury decided that Defendant's vehicle was a "weapon which is capable of producing death or great bodily harm" or a weapon "with which dangerous thrusts can be inflicted" when Defendant used his vehicle to ram the victims' vehicle while the victims were driving in it.

We hold that a jury could reasonably conclude that a person's act of ramming one moving vehicle into another moving vehicle is an action capable of producing death or great bodily harm to the occupants of the rammed vehicle. Moreover, based on the evidence presented at trial, the jury could reasonably conclude that Defendant's actions in ramming the O'Dells' vehicle while they were driving in it constituted the intentional application of force to the O'Dells with a deadly weapon (Defendant's vehicle) in a manner that was capable of producing death or great bodily harm to them.

Accordingly, we affirm Defendant's convictions for two counts of aggravated battery with a deadly weapon.

**Insufficient Evidence (Robbery)**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

In this case, the jury was instructed that in order for it to find Defendant guilty of robbery, the State must prove to its satisfaction the following elements of the crime beyond a reasonable doubt: (1) Defendant took and carried away a trencher and trailer from Mr. O'Dell or from his immediate control intending to permanently deprive Mr. O'Dell of the property; the trencher and trailer had some value; (2) Defendant took the trencher and trailer by force or violence or threatened force or violence; (3) Defendant was not intoxicated from use of alcohol at the time the offense was committed to the extent of being incapable of forming an intention to commit a robbery; and (4) this happened in New Mexico on or about March 20, 2008. [RP 322]

The State presented the testimony of Mr. O'Dell that, among other events that took place that resulted in the other charges, Defendant used his pickup truck to force the O'Dells' pickup truck off the dirt road and blocked it to prevent it from continuing. [DS 4] Defendant then approached the O'Dells' pickup truck, which was pulling a trailer and trencher, and punched through the driver's window, striking Mr. O'Dell in the face. [Id.] Defendant also pointed a rifle at Mr. O'Dell and ordered Mr. O'Dell to disconnect the trailer and trencher from the O'Dells' pickup truck. [Id.] Defendant contends that testimony was presented that Defendant would give the trailer and trencher back when Mr. O'Dell paid Mr. Norton $5,000 he had borrowed to buy the trailer and trencher.

8

The first memorandum indicates that "the [d]ocketing [s]tatement makes clear" that the undisputed testimony was that Defendant violently took the trailer/trencher from the O'Dells but that Defendant intended to return the trailer/trencher to the O'Dells when they paid Mr. Norton $5,000. [1MIO 11] In the docketing statement, Defendant states: "Appellant then ordered O'Dell to disconnect the trailer and trencher from O'Dell[s'] pick up truck, stating that he would give it back when O'Dell paid Norton $5,000." [DS 4, bottom of page] Later in the docketing statement, however, Defendant also states that there was testimony that after violently taking the trailer/trencher from the O'Dells, Defendant did not take the trailer/trencher to Mr. Norton but took the trailer/trencher and left it at Carl Cox's property, and later, Vega, who apparently participated in the violent events against the O'Dells with Defendant, drove the backhoe (the trencher) from the work site to another location. [DS 5]

We hold that the jury could reasonably infer that Defendant intended to permanently deprive the O'Dells of the trailer/trencher based on the evidence that (1) Defendant did not have the authority or the right to violently take the trailer/trencher from the O'Dells; (2) the third party who possessed that right if any, Mr. Norton, did not exercise it; (3) Defendant drove the trailer/trencher to someone else's property (i.e., not to Mr. Norton's property); and (4) subsequently, Defendant's accomplice, Vega, then drove the trailer/trencher to another location. [DS 5] As such, even

though there was some testimony that Defendant said he would return the trailer/trencher to the O'Dells when they paid Mr. Norton $5,000, the totality of the circumstantial evidence about what Defendant actually did with the trailer/trencher allowed the jury to reasonably infer otherwise. That is, the jury was entitled to disbelieve the testimony about what Defendant said he would do when other testimony about Defendant's actions allowed the reasonable inference that Defendant intended to do otherwise.

Accordingly, we affirm Defendant's conviction for robbery.

**Speedy Trial**

As we discussed in the first calendar notice, the record proper indicates that Defendant briefly asserted that his speedy trial rights were violated in his objection to the State's Rule 5-604 petition for extension of time in January 2009. [RP 99, 111, DS 7] Defendant also asserts that "[t]he State's delay in bringing this matter to trial has brought undue emotional distress on Defendant and violated his right to a speedy trial." [RP 112] While the speedy trial analysis is intensely factual, the docketing statement does not indicate what the parties argued at the hearing nor does it explain the basis for the district court's decision to deny Defendant's motion. Moreover, the district court's order states simply that the motion is denied. [RP 154, ¶ 3]

Therefore, in the first calendar notice, this Court requested that Defendant summarize the parties' speedy trial arguments and the factual and legal basis for the district court's decision to deny Defendant's motion. In the discussion of this issue in his first memorandum, however, Defendant is discussing the *Barker* factors with regard to the facts of his case for the first time on appeal. [1MIO 14-20] Defendant makes no assertion that these arguments were actually argued below in either the first or second memoranda, nor does Defendant indicate the bases for the district court's denial of the speedy trial motion. In addition, Defendant does not mention that he actually requested that the district court enter a ruling that would be reviewable by this Court, i.e., with findings and conclusions applying the *Barker* factors in light of the facts of Defendant's case and recent case law, including the required adequate showing by Defendant under the prejudice factor. *See, e.g.*, *State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061 (addressing the "prejudice" factor of the *Barker* test and holding that "[a]lthough the [s]tate bears the ultimate burden of persuasion, [the d]efendant does bear the burden of production on this issue, and his failure to do so greatly reduces the [s]tate's burden" (internal quotation marks omitted); *see also State v. Garza*, 2009-NMSC-038, ¶ 37, 146 N.M. 499, 212 P.3d 387 (holding that "some [non-particularized] prejudice" is not the type of prejudice against which the speedy trial right protects).

As such, Defendant did not provide the district court with an adequate motion that argued all the *Barker* factors in his favor. In turn, because Defendant did not provide such a motion, the State did not respond with its own facts and argument on this issue. The district court was not adequately requested to make a ruling on this issue that could be reviewed by this Court on appeal. *See State v. Rojo*, 1999-NMSC-001, ¶¶ 49-53, 126 N.M. 438, 971 P.2d 829 (filed 1998) (stating that an issue concerning a possible violation of the right to a speedy trial must be raised in the trial court and a ruling invoked on the issue or it will not be considered on appeal); *see also State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113 (indicating that we defer to the district court's factual findings but review de novo the question of whether the defendant's constitutional right to a speedy trial was violated). Because the speedy trial issue was not adequately preserved for this Court's review on the merits, we decline to review it on appeal.

As discussed above with regard to original issue 1, Defendant did raise below, and adequately preserve, his objections to the State's filing of Rule 5-604 petition for extension of time, contending that the petition was filed one day late and contributed to the delay of his case. We note, however, that for the reasons set forth above and in the first calendar notice on this issue 1, the State's petition was not untimely filed under the applicable case law prior to *Savedra*. [CN1, 1-4] Moreover, as we

12

discussed above and in the first calendar notice, even if the State's petition was filed one day late, the district court could consider that the State adequately explained the reasons for the extension request as well as the reasons that the petition was filed on the date it was filed. [RP 128-42; *see also* Supreme Court Order No. 08-8300-52, effective November 24, 2008, providing, under law prior to *Savedra*, that the district court may consider sanctions other than dismissal as appropriate for the State's failure to comply with Rule 5-604].

We hold that even though Defendant did preserve his objections to the delay as occasioned by the State's petition for an extension of time to try Defendant filed pursuant to prior Rule 5-604, the extension request was adequately explained by the State and in and of itself did not provide grounds for this Court to conclude that Defendant's speedy trial rights were violated.

For all of these reasons, we affirm the district court on this issue.

**Double Jeopardy**

We generally apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Where factual issues are intertwined with the double jeopardy analysis, the trial court's fact determinations are

subject to a deferential substantial evidence standard of review. *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

Defendant's double jeopardy claim involves the proper unit of prosecution, that is, whether he can be properly convicted of multiple violations of a single statute. *See State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289 (defining a unit-of-prosecution claim). We review this issue de novo. *Id.* ¶ 6. "In unit-of-prosecution cases, we attempt to determine, based upon the specific facts of each case, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." *State v. Stone*, 2008-NMCA-062, ¶ 3, 144 N.M. 78, 183 P.3d 963 (internal quotation marks and citation omitted). "The number of victims has been a particularly significant indicator in determining whether acts are distinct." *Id.* (internal quotation marks and citation omitted). "While the existence of multiple victims does not, itself, settle whether conduct is unitary or distinct, it is a strong indicator of legislative intent to punish distinct conduct that can only be overcome by other factors." *Id.* (internal quotation marks and citation omitted).

In this case, the two charges of false imprisonment stem from Defendant's act of using his pickup truck to force the O'Dells' truck, in which Mr. and Mrs. O'Dell were sitting, off the dirt road, and blocking it from continuing. [DS 4, 1MIO 3] The

14

jury was separately instructed as to the false imprisonment of Mr. and Mrs. O'Dell. [RP 340, 342] The jury convicted Defendant of the two charges and he was, therefore, appropriately sentenced with regard to the two convictions. *See, e.g.*, *State v. Schoomaker*, 2008-NMSC-010, ¶ 50, 143 N.M. 373, 176 P.3d 1105 (noting that "double jeopardy requires that the lesser offense merge into the greater offense such that the conviction of the lesser offense, not merely the sentence, is vacated"); *see also State v. Mora*, 2003-NMCA-072, ¶ 27, 133 N.M. 746, 69 P.3d 256 (observing that a double jeopardy violation is not rendered harmless by concurrent sentencing).

"False imprisonment consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so." NMSA 1978, § 30-4-3 (1963); UJI 14-401 NMRA. It appears that the wording of the statute evinces a legislative intent to punish each act of false imprisonment against each person. *Bernal*, 2006-NMSC-050, ¶ 14 (stating that "[i[f the statutory language spells out the unit of prosecution, then we follow the language, and the unit-of-prosecution inquiry is complete"); *see State v. Bachicha*, 111 N.M. 601, 607-08, 808 P.2d 51, 54-55 (Ct. App. 1991) (holding that a defendant's acts of specifically pointing a rifle at each of several victims on two or more separate instances, accompanied by verbal threats, constituted evidence from which the jury could properly determine that defendant committed the separate offenses of aggravated

15

assault and false imprisonment against each victim); *see also Stone*, 2008-NMCA-062, ¶ 22 (concluding that separate contributing to the delinquency of a minor convictions for serving alcohol to the other minors did not violate double jeopardy because "[t]here were multiple, different victims"); *Bernal*, 2006-NMSC-050, ¶ 20 (stating that "[i]mportantly, there were two victims" with respect to two attempted robberies, and concluding that there were two offenses where two victims suffered separate and distinct harm); *State v. Barr*, 1999-NMCA-081, ¶ 18, 127 N.M. 504, 984 P.2d 185 (stating that "the presence of multiple victims . . . is the most salient distinctness factor which, as indicated in *Herron*, will likely give rise to multiple offenses" (internal quotation marks and citation omitted)).

We hold that Defendant's convictions for two counts of false imprisonment against Mr. O'Dell and Mrs. O'Dell did not violate double jeopardy in this case.

**Insufficient Evidence (Assault with Intent to Commit a Violent Felony)**

"Assault with intent to commit a violent felony consists of any person assaulting another with intent to kill or commit any murder, mayhem, criminal sexual penetration in the first, second or third degree, robbery or burglary." NMSA 1978, § 30-3-3 (1977). As part of the jury instructions for assault with intent to commit a violent felony, the jury was instructed on the elements of robbery as the underlying felony that Defendant intended to commit. [RP 327, 324] Defendant argues that,

16

since there was insufficient evidence to establish that Defendant intended to permanently deprive the O'Dells of the trailer/trencher (Original Issue 3), there was also insufficient evidence to establish assault with intent to commit a violent felony (robbery). [1MIO 12] We disagree.

We have affirmed that there was sufficient evidence from which the jury could reasonably infer that Defendant intended to permanently deprive the O'Dells of the trailer/trencher. In addition to these reasons, there was testimony that in connection with forcibly taking the trailer/trencher from the O'Dells, Defendant got out of his pickup truck, walked up to the driver's side of the O'Dells' truck, punched through the window, striking Mr. O'Dell in the face, pointed a rifle at Mr. O'Dell, and ordered Mr. O'Dell to disconnect the trailer/trencher from the O'Dells' truck so that Defendant could take it. [1MIO 3-4] Accordingly, we affirm Defendant's conviction for assault with intent to commit a violent felony.

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

17

_____

**JONATHAN B. SUTIN, Judge**


_____

**CELIA FOY CASTILLO, Judge**