This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36245**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID FLOREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl L. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}**     Defendant David Florez appeals his convictions for two counts of aggravated assault upon a peace officer (deadly weapon), contrary to NMSA 1978, Section 30-22-22(A)(1) (1971), arguing that fundamental error resulted from the omission of the deadly weapon element in the jury instructions for both counts. We agree and thus reverse Defendant's convictions and remand for a new trial.

**BACKGROUND**

**{2}**     At trial, Lieutenant Clipper Miller and Officer Kevin Martinez of the Hobbs Police Department testified to the events giving rise to Defendant's charges and convictions. The following facts are drawn from that testimony.

**{3}**     On the night of the incident, then-Sergeant Miller responded to the scene of a stabbing, where he encountered Joshua Peterson, who had a stab wound to his torso. Mr. Peterson gave Sergeant Miller a description of his attacker. Sergeant Miller began searching the area, and soon after, he observed someone matching the description walk into the backyard of a nearby house. Inside the house, Sergeant Miller encountered Defendant, who largely matched the description given by Mr. Peterson. Sergeant Miller escorted Defendant out of the house and onto the front lawn and began asking for personal information. Sergeant Miller noticed Defendant had his hands in his pockets and would not look at him. Sergeant Miller asked Defendant to remove his hands from his pockets, repeating the command three times. After Defendant failed to comply with his third request, Sergeant Miller attempted to pat-down Defendant for weapons. As Sergeant Miller reached for Defendant's hands, Defendant retreated, raised his left hand in a defensive posture, and held in his right hand a "knife with an open blade" to his side. Sergeant Miller described the knife as a pocketknife with a four-to-five-inch locking blade.

**{4}**     Sergeant Miller drew his firearm and repeatedly ordered Defendant to drop the knife. Officer Martinez arrived shortly after to assist Sergeant Miller, approaching Defendant from behind, such that Defendant was between Sergeant Miller and Officer Martinez. Officer Martinez described Defendant as being in a "fighting stance." Sergeant Miller shouted to Officer Martinez that Defendant had a knife. Officer Martinez testified that Defendant then turned around and made a "side slash" with the knife towards him, forcing Officer Martinez to backup. Both Sergeant Miller and Officer Martinez testified that they did not fire their weapons because of the potential for "crossfire" created by Defendant being directly between them.

**{5}**     Defendant then backed away from the officers toward the house and positioned himself behind his mother, where he eventually became compliant and was taken into custody. No knife was found on Defendant's person, but Sergeant Miller located a knife on a couch near the area where Defendant had been standing. Sergeant Miller later inspected the knife, observing tissue and clear and red fluid on the blade. Sergeant Miller testified that, based on his training and experience, the red fluid was consistent with blood. The knife was admitted into evidence for the jury to examine.

**{6}**     Defendant was charged with two counts of aggravated assault upon a peace officer (deadly weapon) and one count of aggravated battery relating to the stabbing incident, to which Sergeant Miller and Officer Martinez originally responded. The State dismissed the battery charge prior to trial. The jury was instructed on two counts of aggravated assault upon a peace officer, with one step-down instruction for assault

upon a peace officer as to Officer Martinez. The jury found Defendant guilty of the two counts of aggravated assault upon a peace officer.

**DISCUSSION**

**{7}** Defendant argues that the district court erred in its instructions to the jury by omitting an essential element of aggravated assault upon a peace officer—i.e., that the jury must find the knife at issue was a deadly weapon. We agree this was error and further conclude the error was fundamental.

**{8}** Because Defendant failed to object to the jury instructions, our review is limited to a consideration of whether the district court committed fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176 (reviewing an unpreserved claim of jury-instruction error for fundamental error). "The rule of fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). "[F]ailure to instruct the jury on an essential element . . . ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction." *State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633. However, fundamental error does not occur if "there can be no dispute that the omitted element was established" or the omitted element was not at issue in the case. *Sutphin*, 2007-NMSC-045, ¶ 16.

**{9}** Here, the jury was instructed, in relevant part, that in order to convict Defendant of aggravated assault upon a peace officer, it merely had to find that Defendant "used a knife" when he assaulted Sergeant Miller and Officer Martinez. But because a pocketknife is not a per se deadly weapon under the applicable statute, NMSA 1978, § 30-1-12(B) (1963), this instruction was incomplete. *See State v. Traeger*, 2001-NMSC-022, ¶ 13, 130 N.M. 618, 29 P.3d 518 ("[W]hen an instrument is not declared by the statute to be a deadly weapon it is a jury question, to be determined by considering the character of the instrument and the manner of its use." (internal quotation marks and citation omitted)); *see also* UJI 14-2202 NMRA, use note 7 (requiring the jury to determine whether object is deadly weapon if object is not listed in Section 30-1-12(B)); UJI 14-2203 NMRA, use note 9 (same). Our Supreme Court has made clear that, when a weapon is not listed as a deadly weapon in the statute, the jury must determine whether the object is a deadly weapon. *See State v. Nick R.*, 2009-NMSC-050, ¶¶ 37, 41, 43, 147 N.M. 182, 218 P.3d 868 (holding that a pocketknife is not per se a deadly weapon and, as such, this is a jury determination). In particular, the jury must be instructed that to find the defendant used a "deadly weapon," it must find that the object, "when used as a weapon, could cause death or great bodily harm[.]" UJI 14-2202; UJI 14-2203 (same). The jury instructions here, having omitted this element, were erroneous. Further analysis, however, is required to determine whether this deficiency rises to the level of fundamental error.

**{10}** The State makes two arguments why the omission of an essential element from the jury instructions is nonetheless not fundamental error in this case. *See Barber*, 2004-NMSC-019, ¶ 20 (stating that omission of an essential element ordinarily is fundamental error). First, the State argues that there is no fundamental error because "the deadly weapon element was indisputably established at trial and no rational jury could have concluded otherwise[.]" *See State v. Orosco*, 1992-NMSC-006, ¶ 12, 113 N.M. 780, 833 P.2d 1146 (stating that reversal is not required where "there can be no dispute that the element was established"). Specifically, the State argues the evidence demonstrated that Defendant used the knife to stab Mr. Peterson, that the knife had what appeared to be blood and tissue on it and, if true, could transfer disease, and that the officers' protective vests would not have protected against an edged weapon like Defendant's knife. For the following reasons, we conclude that this evidence did not indisputably establish that the pocketknife in question was a deadly weapon.

**{11}** No evidence in the record established that the red substance on the knife was in fact blood. And while the State presented evidence establishing that law enforcement originally responded to the scene of a stabbing and encountered Mr. Peterson with a stab wound, Defendant was not conclusively tied to this stabbing, and no evidence established that this particular knife caused any specific physical injury. Indeed, although Defendant's behavior toward the officers may have rendered his possession of the pocketknife dangerous, he inflicted no wounds during the interaction, a fact distinguishing this case from others in which we have declined to find fundamental error owing to the defendant's actual use of the weapon. *Cf. Traeger*, 2001-NMSC-022, ¶ 25 (concluding that "it [did] not shock the conscience or implicate a fundamental unfairness within the system to affirm the [d]efendant's conviction" where the defendant actually used a baseball bat to inflict injury (internal quotation marks and citation omitted)). Finally, even though Sergeant Miller testified that the knife was "like a pocketknife" with a four-to-five-inch blade, "[t]here was no evidence at trial about this particular [pocket] knife that might suggest it was inherently threatening or deadly." *State v. Radosevich*, 2016-NMCA-060, ¶ 9, 376 P.3d 871, *rev'd on other grounds*, 2018-NMSC-028, 419 P.3d 176; *see id.* ¶¶ 8-10 (reversing the defendant's conviction for aggravated assault with a deadly weapon based on fundamental error in the district court's failure to instruct the jury on the deadly weapon element where the defendant used a three-and-one-half-inch kitchen knife). For these reasons, we cannot say that the deadly weapon element was indisputably established at trial.

**{12}** Similarly, we are unpersuaded by the State's argument that the jury's conviction on the aggravated assault charge for Count 2, instead of the lesser included offense of assault upon a peace officer, establishes the "jury harbored no reasonable doubt concerning whether Defendant used a deadly weapon." As discussed above, the jury was not asked to determine whether the knife was a deadly weapon and, therefore, its guilty verdict creates no presumption regarding the deadly weapon element.

**{13}** Second, the State contends the deadly weapon element was not in issue at trial, arguing that Defendant "made an overt tactical decision" to concede that the pocketknife was a deadly weapon and because no evidence was presented to the contrary. *See*

*Sutphin*, 2007-NMSC-045, ¶ 16 ("[F]undamental error does not occur if the jury was not instructed on an element not at issue in the case."). "The question is whether there was any evidence or suggestion in the facts, however slight, that could have put the element . . . in issue." *Orosco*, 1992-NMSC-006, ¶ 10. For the reasons that follow, we conclude that Defendant did not concede the deadly weapon element, and this element was in issue at trial.

**{14}** Defendant proceeded at trial on the theory that he did not have a knife during his confrontation with police because, if he had, Sergeant Miller and Officer Martinez would have shot him. In attempting to establish this theory, Defendant elicited testimony from Sergeant Miller that he considered a knife to be a deadly threat and he was trained to respond to deadly threats with deadly force. Defendant reiterated this theory during closing argument, stating, "If in fact Officer Martinez was threatened with a knife . . . [Defendant] would have been shot." The State equates the foregoing as a concession by Defendant that the knife at issue was a deadly weapon. We disagree. While Defendant elicited testimony from Sergeant Miller establishing he believed knives to be "deadly threat[s]," such testimony does not amount to a concession that the particular knife at issue here meets the specific legal definition of a deadly weapon outlined in Section 30-1-12(B). Indeed, Sergeant Miller testified that he perceives any knife to be a deadly threat, a contention that has been specifically rejected by our Supreme Court. *See Nick R.,* 2009-NMSC-050, ¶¶ 43, 49 (holding that a pocketknife is not a per se deadly weapon and concluding a jury determination on this issue was required). Further, because Defendant never conceded he had a knife, we cannot agree with the State that he conceded the knife was a deadly weapon and, as discussed above, this element was not indisputably established. Finally, contrary to the State's contention, nothing in the facts suggests Defendant endorsed the deficient jury instructions "in furtherance of some deliberate trial tactic," rather than through oversight or neglect. *See State v. Foxen*, 2001-NMCA-061, ¶ 12, 130 N.M. 670, 29 P.3d 1071 (reviewing jury instructions for fundamental error where the "deficiencies in the instructions . . . by all appearances . . . were simply the result of oversight or neglect"). Given these circumstances, we conclude that the knife's character as a deadly weapon was in issue at trial.

**{15}** It was the jury's province to determine whether the pocketknife qualified as a deadly weapon and was used as such. *See Traeger*, 2001-NMSC-022, ¶¶ 12-13. The instructions given in this case failed to apprise the jury of its responsibility to make those determinations. Because of this, and because the deadly weapon element was not indisputably established and was in issue, we conclude Defendant was deprived of his fundamental right to have the jury decide each element of the charged offenses beyond a reasonable doubt. *See Sutphin*, 2007-NMSC-045, ¶ 16. Accordingly, Defendant's convictions for aggravated assault upon a peace officer (deadly weapon) resulted in fundamental error and must be reversed.

**CONCLUSION**

**{16}** We reverse Defendant's convictions and remand to the district court for a new trial.

**{17}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**