This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40563

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARL E. GAGE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Emilio Chavez, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Harrison & Hart, LLC
Nicholas T. Hart
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** A jury convicted Defendant of possession of a deadly weapon or explosive device by a prisoner, contrary to NMSA 1978, Section 30-22-16 (1986); tampering with evidence, contrary to NMSA 1978, Section 30-22-5 (2003); and criminal damage to property, contrary to NMSA 1978, Section 30-15-1 (1963). Defendant argues that Section 30-22-16 is unconstitutionally vague; a jury instruction resulted in fundamental error; the evidence did not support the convictions for possession of a deadly weapon

by a prisoner or tampering with evidence; the sentence was illegal; and cumulative error resulted in a fundamentally unfair trial. We reverse and remand for resentencing, but otherwise affirm.

**DISCUSSION**

**{2}** Because this memorandum opinion is prepared for the benefit of the parties, we reserve our recitation of the factual background to that necessary to resolve Defendant's five appellate issues. We address each in turn.

**I. Unconstitutional Vagueness**

**{3}** Defendant first argues on appeal that Section 30-22-16 is unconstitutionally vague. Regardless of whether Defendant preserved the vagueness issue, we review de novo the constitutionality of a statute. *See State v. Laguna*, 1999-NMCA-152, ¶¶ 18, 24, 128 N.M. 345, 992 P.2d 896. The relevant statutory language is found in two different provisions. Section 30-22-16 states that "[p]ossession of [a] deadly weapon or explosive by [a] prisoner in lawful custody consists of any inmate of a penal institution, reformatory, jail or prison farm or ranch possessing any deadly weapon or explosive substance." The term "deadly weapon" is defined by NMSA 1978, Section 30-1-12(B) (1963), as follows:

> [A]ny firearm, whether loaded or unloaded; or any weapon which is capable of producing death or great bodily harm, including but not restricted to any types of daggers, brass knuckles, switchblade knives, bowie knives, poniards, butcher knives, dirk knives and all such weapons with which dangerous cuts can be given, or with which dangerous thrusts can be inflicted, including swordcanes, and any kind of sharp pointed canes, also slingshots, slung shots, bludgeons; or any other weapons with which dangerous wounds can be inflicted.

This statute is commonly understood to create two categories of deadly weapons: (1) per se deadly weapons that are explicitly listed in Section 30-1-12(B); and (2) items that a jury may determine to be deadly weapons by "considering the character of the instrument and the manner of its use." *State v. Traeger*, 2001-NMSC-022, ¶ 10, 130 N.M. 618, 29 P.3d 518 (internal quotation marks and citation omitted). The parties appear to agree that the issue in the present appeal involves whether the second category of deadly weapons is unconstitutionally vague.

**{4}** The test for unconstitutional vagueness is "(1) whether the statute gives fair notice to persons of ordinary intelligence as to the conduct it prohibits, and (2) whether the statute sets standards and guidelines sufficient to avoid arbitrary and discriminatory enforcement." *State v. Greenwood*, 2012-NMCA-017, ¶ 40, 271 P.3d 753. Legislative enactments carry "[a] strong presumption of constitutionality." *Id.* ¶ 39 (internal quotation marks and citation omitted). It is well established that "the party challenging constitutionality has the burden of proving a statute is unconstitutional beyond all

reasonable doubt." *Id.* (internal quotation marks and citation omitted). A party cannot meet that burden "if the statute clearly applied to his conduct." *Laguna*, 1999-NMCA-152, ¶ 24.

**{5}** In the present case, Sections 30-22-16 and 30-1-12(B) clearly applied to Defendant's conduct. The items at issue were a thick, bent piece of wire found in Defendant's pocket; a long, threaded bolt that was found between pieces of bread in plastic wrap on a table in Defendant's cell; and several sharp objects found underneath the toilet in Defendant's cell. Defendant maintains the bolt in particular could not be a deadly weapon because it is blunt, has no sharp points, and cannot inflict "dangerous cuts" or "cause a wound while being thrusted." *See* § 30-1-12(B). Our inquiry at this stage, however, is not whether the items were in fact deadly weapons. Instead our inquiry is (1) whether a person of ordinary intelligence would know what conduct is prohibited by the statutes; and (2) whether the statute establishes a standard that avoids arbitrary enforcement. *See Greenwood*, 2012-NMCA-017, ¶ 40. In this context, a prisoner in lawful custody has fair notice that the statute prohibits the possession of items that could cause death or great bodily harm, and New Mexico law has acknowledged that the question of whether some items could cause great bodily harm is to be determined by the jury, "considering the character of the instrument and the manner of its use." *Traeger*, 2001-NMSC-022, ¶ 10 (internal quotation marks and citation omitted); *State ex. rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 36, 137 N.M. 687, 114 P.3d 367 ("It is well settled that where a person is aware his or her conduct is approaching the line of prohibited conduct, he or she bears the risk of treading near the line."). To meet the burden to establish unconstitutional vagueness, therefore, Defendant must show beyond a reasonable doubt that no jury could determine these items were deadly weapons. *See Greenwood*, 2012-NMCA-017, ¶ 40. Despite Defendant's position that the bolt could not be a deadly weapon because it is not sharp and cannot cut or cause a wound when thrusted, the jury was instructed that to be a deadly weapon, the jury must find that the item "could cause death or great bodily harm." Great bodily harm was defined for the jury as follows: "[A]n injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body." A jury could conclude, based on these instructions, that blunt instruments are capable of inflicting great bodily harm. Under these circumstances, Defendant has not demonstrated that a jury could not reasonably conclude that a large metal bolt could be used as a deadly weapon. *See Traeger*, 2001-NMSC-022, ¶ 10; *see also Greenwood*, 2012-NMCA-017, ¶ 39 (placing the burden on the party challenging the constitutionality of a statute).

**{6}** Defendant generally argues that federal cases have determined that the Section 30-1-12(B) language, "any other weapons with which dangerous wounds can be inflicted," is unconstitutionally vague. The federal cases, however, involved specific federal statutes that the Supreme Court of the United States had repeatedly held were to be evaluated objectively, without reference to the facts of the particular case. *See Johnson v. United States*, 576 U.S. 591, 596 (2015) (discussing the "categorical approach" that involves "the ordinary case" (internal quotation marks and citation

omitted)); *Sessions v. Dimaya*, 584 U.S. 148, 162-63 (2018) (reaffirming the categorical approach and rejecting an analysis that considers "the specific way in which a defendant committed a crime"); *United States v. Davis*, 588 U.S. 445, 466-67 (2019) (reaffirming the categorical approach). Whether the objects are deadly weapons in the present case, however, is evaluated under the circumstances. *See Traeger*, 2001-NMSC-022, ¶ 10 ("Where the instrument used is not one declared by the statute to be a deadly weapon, it is ordinarily a question for the jury to determine whether it is so, considering the character of the instrument and the manner of its use." (internal quotation marks and citation omitted)).

**{7}** For the same reason, we do not accept Defendant's argument that the second category of dangerous weapons "raises more questions than it answers" and could criminalize many common items. We do not consider hypothetical deadly weapons. *See People v. Rodriguez*, 123 Cal. Rptr. 185, 191 (Ct. App. 4th Dist. 1975) (declining to consider whether hypothetical objects could support a constitutional vagueness challenge in the abstract); *cf. State v. Zachariah G.*, 2022-NMSC-003, ¶¶ 16-17, 501 P.3d 451 (considering California law to be helpful to evaluate the "use" of a deadly weapon). Instead we restrict ourselves to whether Sections 30-22-16 and 30-1-12(B) "give a person of ordinary intelligence a reasonable opportunity to know" that a prisoner in lawful custody may not possess deadly weapons, including a thick piece of hooked wire, a threaded bolt the length of a slice of sandwich bread, and other sharpened metal objects. *See State v. Luckie*, 1995-NMCA-075, ¶ 5, 120 N.M. 274, 901 P.2d 205. In light of that standard, Defendant did not meet the burden to establish that Sections 30-22-16 and 30-1-12(B) are unconstitutionally vague beyond a reasonable doubt. *See Greenwood*, 2012-NMCA-017, ¶¶ 39-40.

## II.    Jury Instruction Error in the Possession of a Deadly Weapon by a Prisoner Instruction

**{8}** Defendant contends that the district court's jury instruction for possession of a deadly weapon by a prisoner was fundamental error. To review for fundamental error, we (1) "determine whether a reasonable juror would have been confused or misdirected by the jury instruction"; and (2) "[i]f we find error, our obligation is to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice." *See State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted).

**{9}** Defendant first argues that the district court's use of the word "sharp . . . invaded the province of the jury to decide whether the metal instruments were deadly weapons." The jury instruction, in its final form, stated as follows:

> For you to find [D]efendant guilty of possession of a deadly weapon by a prisoner as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant was in custody or confinement at the Taos Adult Detention Center;

2. [D]efendant possessed *one or more* sharp pieces of metal. *One of the* pieces of metal *is* a deadly weapon only if you find that if used as a weapon, sharp pieces of metal could cause death or great bodily harm;

3. This happened in New Mexico on or about the 11[th] day of August, 2019.

Defendant contends by this instruction, the district court "deprived the jury of the ability to determine whether the metal instruments were deadly weapons by describing those metal instruments as 'sharp pieces of metal.'" Defendant cites multiple cases holding that a district court should not predetermine facts, direct the jury's verdict, or distort or characterize facts. We disagree that the instruction stated as fact that Defendant possessed sharp pieces of metal. The instruction's introduction states that to find Defendant guilty, the State had to prove the numbered items beyond a reasonable doubt, including whether "[D]efendant possessed *one or more* sharp pieces of metal." The district court did not tell the jury that Defendant possessed sharp pieces of metal. The district court told the jury that the State had to prove that Defendant possessed sharp pieces of metal. We see no error in the instruction on this basis.

**{10}** Defendant's second argument relates to the district court's amendment to the instruction. The district court originally instructed the jury that to find Defendant guilty of possession of a deadly weapon by a prisoner, the State must prove beyond a reasonable doubt that Defendant "possessed several sharp pieces of metal." During deliberations, the jury sent the following note:

Question Count 1

- Definition of <u>several</u> is multiple = several?
- We are sure about a single piece/object (pocket wire)
- There is debate on a 2nd (bread bolt)
- More debate on possession regarding objects under toilet

The district court consulted the parties, and although Defendant agreed that multiple pieces of metal were not necessary to establish a violation of the statute, Defendant noted that the instruction originally given "track[ed] the criminal information." Defendant further indicated a preference that "the instruction track what was bound over to this court, which is several pieces of—several sharpened—pieces of metal instruments." The district court determined to amend the instruction for Count 1 to read as set forth above, including the italicized language that the State must prove that Defendant "possessed *one or more* sharp pieces of metal." On appeal Defendant asserts that he did not object to the amended instruction, but argues that because he had been charged in the criminal information with possession of "several sharpened pieces of metal, instruments or objects," the district court's amendment to the instruction

amounted to "an unlawful amendment to the" charging document that "changed the substance of that charge." Because, as we explain, we conclude that the amended instruction was not error, we need not decide whether Defendant sufficiently preserved the objection. *See Barber*, 2004-NMSC-019, ¶ 19 (noting that the first step of fundamental error review of jury instructions is the same as that for reversible error).

**{11}** Rule 5-204 NMRA permits amendment to a charging document in order to conform to the evidence presented at trial provided that the amendment (1) does not charge an entirely new offense, and (2) does not prejudice the "substantial rights of the defendant." Rule 5-204(A), (C); *see State v. Branch*, 2010-NMSC-042, ¶ 19, 148 N.M. 601, 241 P.3d 602 ("Rule 5-204(C) cannot be used to impose an *entirely new charge* against a defendant after the close of testimony." (alteration, internal quotation marks, and citation omitted)), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The State maintains that (1) the instruction did not amend the charging document because Count 1 was titled "Possession of a Deadly Weapon or Explosive by a Prisoner" and Defendant therefore had notice that criminal liability would result if a jury determined that he possessed a single item; and (2) Defendant did not establish prejudice stemming from any amendment. We agree with the State.

**{12}** Assuming but not deciding that the amendment to the instruction caused an amendment to the charging document, the offense set forth in the amended instruction was not an entirely new offense and Defendant does not demonstrate prejudice. *See* Rule 5-204(A), (C). The jury considered the same offense that had been charged, possession of a deadly weapon by a prisoner. The amendment to the instruction did not materially alter the State's theory of the case but instead clarified that possession of a single sharp piece of metal satisfied that element of the charged crime. Based on the charging document, Defendant had every reason to defend against possession of each sharp piece of metal. *Cf. State v. Roman*, 1998-NMCA-132, ¶¶ 13-14, 125 N.M. 688, 964 P.2d 852 (reversing a conviction arising from a charging document amended at trial because the defendant "had no reason to defend" against the amended charge).

**{13}** On appeal, Defendant does not explain how the defense of the case would have been different had the charging document referred to "a" sharp metal object instead of "several" sharp metal objects. Defendant contends, based on the jury's note, that the outcome would likely have been different if the State were required to prove that he possessed several sharp pieces of metal instead of one or more. Prejudice from an amendment to a charging document, however, "exists when the defendant is unable to reasonably anticipate from the indictment the nature of the proof the state will produce at trial." *State v. Romero*, 2013-NMCA-101, ¶ 9, 311 P.3d 1205; *see also State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 ("A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be."). For these reasons, the amendment to the instruction was not error because the jury would not have been misdirected by the amended instruction. *See Barber*, 2004-NMSC-019, ¶ 19 (explaining that the first step in any review of asserted jury instruction error is whether the jury "would have been confused or misdirected").

## III.    Sufficiency of the Evidence

**{14}**    Defendant next challenges the sufficiency of the evidence to support the convictions for possession of a deadly weapon by a prisoner and tampering with evidence. To resolve these questions, we consider "whether the evidence could justify a finding by a rational trier of fact that each essential element of the crime charged has been established beyond a reasonable doubt." *See Laguna*, 1999-NMCA-152, ¶ 7.

**{15}**    Regarding the possession of a deadly weapon by a prisoner conviction, Defendant argues that (1) the State was required to establish that Defendant intended to use each of the three different objects as deadly weapons; (2) the State argued to the jury that Defendant possessed the instruments not as deadly weapons but in order to "dig a hole through a wall so that he could escape"; and (3) the State did not establish that Defendant possessed the tools under the toilet. We disagree with the first two arguments and do not reach the third and therefore affirm Defendant's conviction under Section 30-22-16.

**{16}**    Section 30-22-16 establishes "a crime closely approaching a strict liability crime." *Cf. State v. Baca*, 1992-NMSC-055, ¶ 16, 114 N.M. 668, 845 P.2d 762; *see also id.* (considering the defense of duress). This was because, as a California court had explained, "The purpose of these statutes is to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners. Evil intent or intended use for an improper purpose is not an element of the crime." *Id.* (internal quotation marks and citation omitted). The uniform jury instruction comports with this view and requires the jury to find that (1) Defendant possessed a deadly weapon; and (2) the object that Defendant possessed, "*if used* as a deadly weapon, . . . could cause death or great bodily harm." *See* UJI 14-2254 NMRA (emphasis added). The instruction requires no finding of intent to use the object as a deadly weapon. Along these lines, the State argued specifically that the hooked wire found in Defendant's pocket could be used as a dangerous weapon and contrary to Defendant's argument, did not confine the theory related to the wire to tools for escape.

**{17}**    Because we have affirmed the amended jury instruction that allowed the jury to convict based on "*one or more* sharp pieces of metal" and because we conclude that the evidence supported the verdict relating to the wire, we need not consider whether the evidence related to the bolt or the objects under the toilet supported the verdict. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 (holding that "a conviction under a general verdict must be reversed if one of the alternative bases of conviction is legally inadequate, but that . . . due process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction" (citations omitted)).

**{18}**    We turn to Defendant's sufficiency arguments related to tampering with evidence. To establish tampering with evidence, the State was required in relevant part to prove that (1) "[D]efendant destroyed, changed, hid, fabricated, or placed sharp pieces of metal"; and (2) "[b]y doing so [D]efendant intended to prevent the apprehension,

prosecution, or conviction of [D]efendant for the crime of possession of [a] deadly weapon by a prisoner." Defendant contends that the evidence was insufficient because detention center staff had to remove the toilet for access to the items. Defendant maintains that "[b]ecause there was no evidence that [he] could access underneath the toilet, there was not sufficient evidence that he tampered with evidence by placing the metal instruments underneath it." The evidence showed that the cell was inspected for damage and contraband before Defendant took occupancy as the single resident. When searching the cell after Defendant had been living in it, detention center staff saw a "gap" between the toilet and the floor, removed the toilet by accessing bolts housed in another room, and located four sharp metal objects under the toilet. Thus, a reasonable juror could conclude that the gap between the floor and the toilet was not there before Defendant took residence in the cell and that he put the sharp items under the toilet by way of the gap, in order to hide the fact that he had possessed the items that witnesses identified as deadly weapons. Defendant's argument to the contrary would be persuasive if the State were required to prove that Defendant could again access the items after he put them in the gap. The tampering with evidence elements include no such requirement. Based on the testimony, a photograph of the items positioned next to the gap near the toilet, and the instruction that defined "deadly weapon," the jury could have reasonably found that Defendant hid the items to avoid apprehension, prosecution, or conviction of possession of a deadly weapon by a prisoner. *See Laguna*, 1999-NMCA-152, ¶ 7. Because the evidence was sufficient to support the jury's verdict relating to one count of tampering with evidence, we do not consider whether the evidence was sufficient to support tampering in relation to the wire or the bolt. *See Olguin*, 1995-NMSC-077, ¶ 2.

## IV.    Sentencing

**{19}**    Defendant argues that the sentence imposed was illegal because the State did not file a supplemental criminal information as required by NMSA 1978, Section 31-18-19 (1977) before pursuing a habitual offender designation. Defendant acknowledges that he did not object but argues that the issue implicates the district court's subject matter jurisdiction and therefore did not need to be preserved. *See State v. Trujillo*, 2007-NMSC-017, ¶ 9, 141 N.M. 451, 157 P.3d 16 (explaining that "[i]f the [district] court was statutorily or constitutionally precluded from sentencing [the defendant] as a habitual offender, then [the defendant]'s enhanced sentence is illegal and he was not required to preserve his argument"). The State acknowledges that no supplemental information was filed, but points out that the certified documents relating to the prior convictions had been provided, the charges were read in court, and the district court gave Defendant multiple opportunities to request a continuance to allow for an opportunity to challenge the evidence supporting the allegations. The State characterizes the failure as a "procedural defect" that can be waived and not an illegal sentence. As we explain, however, we agree with Defendant that under the present circumstances, the habitual offender sentence was illegal because it was not authorized by the statute. *See State v. Jimenez*, 2003-NMCA-026, ¶ 20, 133 N.M. 349, 62 P.3d 1231 ("An illegal sentence is one that is not authorized by statute and not within the trial

court's competency to act."), *rev'd on other grounds*, 2004-NMSC-012, 135 N.M. 442, 90 P.3d 461.

**{20}** Section 31-18-19 provides that

> [i]f at any time, either after sentence or conviction, it appears that a person convicted of a noncapital felony is or may be a habitual offender, it is the duty of the district attorney of the district in which the present conviction was obtained to file an information charging that person as a habitual offender.

The district court's obligations are found in NMSA 1978, Section 31-18-20 (1983), which states that "[t]he court wherein a person has been convicted of a noncapital felony and where that person has been charged as a habitual offender under the provisions of Section 31-18-19 . . . shall bring the defendant before it, whether he is confined in prison or not" and inform the defendant of "(1) the allegations of the information; and (2) [the] right to be tried as to the truth thereof according to law." Section 31-18-20(A). Section 31-18-20(B) governs the fact-finding portion of the habitual offender inquiry, and Section 31-18-20(C) directs that "[i]f the court finds that the defendant is the same person and that he was in fact convicted of the previous crime or crimes as charged, the court shall sentence him to the punishment as prescribed in [NMSA 1978,] Section 31-18-17 [(2003)]."

**{21}** The State's compliance with Section 31-18-19—filing a criminal information—therefore affords the district court the authority to (1) "bring the defendant before it," *see* § 31-18-20(A); and (2) to sentence the Defendant as a habitual offender if the State meets its burden of proof "of the previous crime or crimes *as charged*." *See* § 31-18-20(C) (emphasis added); *State v. Simmons*, 2006-NMSC-044, ¶ 10, 140 N.M. 311, 142 P.3d 899 (noting that "the [s]tate has the burden of proof under habitual offender proceedings"). New Mexico law makes clear that prior convictions need not be charged in the original indictment, *see State v. Gonzales*, 1972-NMCA-130, ¶ 5, 84 N.M. 275, 502 P.2d 300, and can be brought "at any time following conviction and prior to the expiration of the period of incarceration and any parole or probation that follows that period," *State v. Leyba*, 2009-NMCA-030, ¶ 11, 145 N.M. 712, 204 P.3d 37. A supplemental information may be appropriately offered in open court, even if it is not ultimately filed with the court clerk. *See State v. Handa*, 1995-NMCA-042, ¶ 28, 120 N.M. 38, 897 P.2d 225. But in the present case, the State did not prepare or file a supplemental information at any time. The record establishes that the State gave Defendant notice of the prior convictions, offered the district court certified copies, reviewed them, sought enhancement based on two of them, and gave Defendant notice of the prior convictions. No authority, however, supports a conclusion that the district court has jurisdiction to impose a habitual offender sentence if the defendant has not been so "charged" at all—such as here, when the State has not prepared or presented a supplemental information at any time. As a result, despite Defendant's having not challenged the basis for the habitual offender enhancement, the sentence must be vacated. *Cf. Smith v. Abram*, 1954-NMSC-061, ¶ 21, 58 N.M. 404, 271 P.2d 1010

(considering the sufficiency of an indictment and noting "[t]hat a person may not be punished for a crime without a formal and sufficient accusation even if he voluntarily submits to the jurisdiction of the court cannot be questioned"), *superseded by rule as stated in State v. Huoidobre*, 2025-NMSC-007, ¶ 7 n.3, 563 P.3d 890.

## V. Cumulative Error

**{22}** Last, Defendant maintains that counsel's cumulative errors throughout the trial "cast doubt on the fairness of [the one]-day trial that resulted in" nineteen years of incarceration. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. To the extent that the asserted errors include those raised on appeal, we have already determined that the only error arose at sentencing. *Id.* ("The doctrine cannot be invoked if no irregularities occurred."). Otherwise, Defendant argues that counsel failed "to object to prejudicial evidence related to violence and continuing detention." Specifically, Defendant challenges (1) testimony that Defendant's pod housed "more high risk" detainees who posed a risk to each other and detention center staff; (2) argument that "connect[ed] violence to" Defendant by suggesting that Defendant could use the objects to threaten or hurt others; and (3) a reference to Defendant's "detention center issued mask," which revealed that Defendant was detained at the time of trial. The State, however, bore the burden to prove beyond a reasonable doubt that while in custody, Defendant possessed a deadly weapon, and as we have explained, whether an object is a deadly weapon depends on the circumstances. *See* § 30-22-16; *Traeger*, 2001-NMSC-022, ¶ 10. Thus, the references to high risk detainees and potential uses for the objects were relevant to the crimes charged, and we are satisfied that the brief reference to the detention center mask did not deprive Defendant of a fair trial. *See Martin*, 1984-NMSC-077, ¶ 17 (explaining that the doctrine of cumulative error requires reversal of "any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial").

## CONCLUSION

**{23}** We reverse and remand for resentencing, but otherwise affirm the district court.

**{24} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**